Docket No. 23-13029

---

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE ELEVENTH CIRCUIT

---

RAMONA THURMAN BIVINS,

*Plaintiff-Appellee,*

*v.*

GAIL HAMBRICK, in her individual capacity

*Defendant-Appellant.*

---

On appeal from the United States District Court
for the Northern District of Georgia

Civil Action File No. 1:22-cv-4149-WMR

---

## APPELLANT'S BRIEF

---

Jack R. Hancock
Ali Sabzevari
John D. Bennett
Kirsten S. Daughdril
P. Michael Freed
FREEMAN MATHIS & GARY, LLP
100 Galleria Parkway, Suite 1600
Atlanta, Georgia 30339
(770) 818-0000

*Attorneys for Appellant*

# CORPORATE DISCLOSURE

The following is a complete list of all trial judges, attorneys, persons, associations of persons, firms, partnerships, or corporations that have an interest in the outcome of the particular case or appeal, including subsidiaries, conglomerates, affiliates, parent corporations, any publicly held corporation that owns 10% or more of the party's stock, and other identifiable legal entities related to a party:

1. Anderson, Alieka – Defendant (in her individual capacity)

2. Bennett, John D. – Counsel for Appellant

3. Bivins, Ramona – Appellee

4. Buckley, Edward D. – Counsel for Appellee

5. Clayton County, Georgia – Defendant

6. Daughdril, Kirsten S. – Counsel for Appellant

7. Franklin, Felicia – Defendant (in her individual capacity)

8. Freed, P. Michael – Counsel for Appellant

9. Freeman Mathis & Gary, LLP – Counsel for Appellant

10. Hambrick, Gail – Appellant (in her individual capacity)

11. Hancock, Jack R. – Counsel for Appellant

12. Pontrelli, P. Jay – Counsel for Appellee

13.     Ray, II, Honorable William M. – District Court Judge,

         U.S. District Court for the Northern District of Georgia

14.     Sabzevari, Arash Ali – Counsel for Appellant

15.     Tate, Andrew R. – Counsel for Appellee

## STATEMENT ON ORAL ARGUMENT

Appellant requests oral argument.

Appellee, a public employee, filed suit under 42 U.S.C. § 1983, alleging a violation of her First Amendment right to intimate association. Appellant, one of five Clayton County Board of Commissioners, asserted qualified immunity in a motion to dismiss. The District Court denied the motion. It did so by improperly imputing onto Appellant the allegations against the other Commissioner-Defendants to find a sufficiently pleaded constitutional violation by Appellant.

This Court has held that the unconstitutional motives of one or more legislative body members (e.g., a county Board of Commissioners) cannot be attributed to other members to impose § 1983 liability on a local government (e.g., a county). It does not appear that this Court has addressed the applicability of that rule in assessing the potential liability of another legislative body member. While Appellant contends that the rule should apply equally here, oral argument may help the Court decide this novel issue.

The District Court also cited three prior decisions from this Court as clearly establishing a First Amendment violation. Each case is distinguishable in ways that prevent them from clearly establishing the law governing the facts here. And although those differences are material, they are subtle. A discussion of those subtleties and the reasons why those cases do not clearly establish a constitutional violation here may also aid the Court in its decisional process.

# TABLE OF CONTENTS

**Statement on Oral Argument** ................................................................. i

**Statement of Subject-Matter and Appellate Jurisdiction** .............1

**Statement of the Issues** ..................................................................2

**Statement of the Case** ....................................................................2

   I.   Introduction .................................................................................. 2

  II.  Course of Proceedings Below ......................................................4

 III.  Statement of the Facts ..................................................................5

       A.   Clayton County employed Bivins as CFO under a contract. . 5

       B.   Bivins's husband campaigned for the reelection of
            Commissioner Davis. ...........................................................6

       C.   The "Campaign Sign Incident" ..............................................6

       D.   The Board terminated Bivins's employment contract. ..........7

       E.   The District Court denied Hambrick qualified immunity
            based on Bivins's allegations against the other
            Commissioners. ....................................................................8

  IV.  Standards of Review .................................................................... 12

**Summary of the Argument** ............................................................12

**Argument and Citations of Authority** ..........................................14

   I.   The standards governing Hambrick's motion to dismiss on
      qualified immunity set the stage for uncovering the District
      Court's error. .............................................................................14

       A.   To survive Hamrick's motion to dismiss, Bivins was required
            to plead facts specific to Hambrick sufficient to show that
            she violated Bivins's First Amendment rights through her
            own actions. .......................................................................16

B.    Bivins must clear a high hurdle to defeat Hambrick's qualified immunity from her First Amendment claim......... 18

C.    Bivins needed to plead facts that, if true, would prove that Hambrick voted to terminate her contract because of an unconstitutional motive. ....................................................... 18

II.  Bivins failed to plead allegations against Hambrick sufficient to establish a First Amendment violation and defeat qualified immunity. ...................................................................................... 19

A.    The District Court erred in using the allegations against Franklin and Anderson to conclude that Bivins sufficiently pleaded a First Amendment violation by Hambrick. ........... 20

B.    Bivins's allegations against Hambrick do not establish a First Amendment violation. ................................................... 25

III. The District Court erred in holding that Hambrick violated Bivins's First Amendment rights under clearly established law.. 28

**Conclusion** ............................................................................................. **35**

# TABLE OF CITATIONS

## Cases

*Ashcroft v. al-Kidd*, 563 U.S. 731 (2011)................................................28

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ...................... 14, 15, 16, 17, 27, 28

*Behrens v. Pelletier*, 516 U.S. 299 (1996) ....................................................1

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ....................................17

*Campbell v. Rainbow City, Ala.*, 434 F.3d 1306 (11th Cir. 2006) ...........22

*Chesser v. Sparks*, 248 F.3d 1117 (11th Cir. 2001)................................12

*DeMartini v. Town of Gulf Stream*, 942 F.3d 1277 (11th Cir. 2019).......19

*Dixon v. Burke County, Ga.,* 303 F.3d 1271 (11th Cir. 2002) .............23, 24

*Flores v. Satz*, 137 F.3d 1275 (11th Cir. 1998) .......................................12

*Gaines v. Wardynski*, 871 F.3d 1203 (11th Cir. 2017).......... 18, 19, 31, 33

*Keating v. City of Miami*, 598 F.3d 753 (11th Cir. 2010) ........... 14, 17, 27

*Lawson v. Curry*, 244 Fed. Appx. 986 (11th Cir. 2007) ...........................32

*Leslie v. Hancock County Bd. of Educ.*, 720 F.3d 1338 (11th Cir. 2013)14

*Mason v. Village of El Portal,* 240 F.3d 1337 (11th Cir.2001)...............23

*Matthews v. Columbia County,* 294 F.3d 1294 (11th Cir. 2002) 20, 21, 22

*McCabe v. Sharrett*, 12 F.3d 1558 (11th Cir. 1994) .............. 11, 29, 30, 31

*Mitchell v. Forsyth*, 472 U.S. 511 (1985)....................................................1

*Mize v. Jefferson City Bd. of Educ.*, 93 F.3d 739, 745 (11th Cir. 1995)...34

*Shahar v. Bowers*, 114 F.3d 1097 (11th Cir. 1997)................................32

*White v. Pauly*, 137 S. Ct. 548 (2017)................................................28, 33

**Statutes**

28 U.S.C. § 1291 ....................................................................................1

28 U.S.C. § 1331 ....................................................................................1

28 U.S.C. § 1343 ....................................................................................1

28 U.S.C. § 1367 ....................................................................................1

42 U.S.C. § 1983 .................................................................................i, 4

**Rules**

FED. R. APP. P. 4(a)(1)(A) ......................................................................1

Fed. R. Civ. P. 12(b)(6) ......................................................................4, 5

Fed. R. Civ. P. 8(a)(2) ..........................................................................16

## STATEMENT OF SUBJECT-MATTER AND APPELLATE JURISDICTION

The United States District Court for the Northern District of Georgia had original subject matter jurisdiction over this case under 28 U.S.C. §§ 1331 and 1343 as to the federal claims and supplemental jurisdiction over the state-law claims under 28 U.S.C. § 1367.

This Court has jurisdiction to review the district court's denial of qualified immunity as a "final order" immediately appealable under 28 U.S.C. § 1291. *Behrens v. Pelletier*, 516 U.S. 299, 313 (1996); *Mitchell v. Forsyth*, 472 U.S. 511, 530 (1985).

Appellant timely filed her notice of appeal on September 8, 2023, within 30 days from the denial of her motion to dismiss on August 10, 2023. *See* FED. R. APP. P. 4(a)(1)(A).

1

## STATEMENT OF THE ISSUES

1) Did the District Court err in denying Appellant qualified immunity by imputing onto her the alleged conduct of her co-defendants to find that Appellee sufficiently pleaded a constitutional violation by Appellant?

2) Did the District Court err in denying Appellant qualified immunity by relying on cases with materially different facts as clearly establishing a constitutional violation?

## STATEMENT OF THE CASE

## I.    Introduction

The five-member Clayton County (Ga.) Board of Commissioners ("Board") terminated Appellee Ramona Thurman Bivins's ("Bivins") employment contract by a vote of 3-2 in June 2022. She filed this suit asserting, among other things, a § 1983 claim for First Amendment retaliation. She alleges that Appellant Gail Hambrick, the District 2 Commissioner, and the two other Commissioners who voted to terminate her contract did so in retaliation for her husband's political activities. That, she claims, violates her First Amendment right of intimate association.

2

The District Court denied qualified immunity to Hambrick on her motion to dismiss. It did the same to the other two Commissioners on their motion for judgment on the pleadings. But Hambrick is the only Commissioner pursuing an interlocutory appeal.

That is because Bivins's specific allegations against Hambrick are far sparser than those against the other Commissioners. The District Court acknowledged that but denied Hambrick qualified immunity all the same. In reaching that decision, the court relied primarily on the specific allegations of an unconstitutional motive against the other Commissioners. In other words, the District Court imputed the other Commissioners alleged motives onto Hambrick to deny her qualified immunity. That was erroneous.

This Court has held that the unconstitutional motivations of one public body member cannot be imputed onto another. So the District Court should have disregarded the allegations against the other Commissioners from its determination of whether Bivins sufficiently pleaded a First Amendment violation *by Hambrick* under clearly established law. When those allegations are correctly omitted, Bivins's allegations against Hambrick fall short of a sustainable claim that

3

Hambrick violated Bivins's clearly established constitutional rights. As a result, Hambrick is entitled to qualified immunity.

## II.    Course of Proceedings Below

Bivins filed her complaint in the Northern District of Georgia on October 17, 2022. (Doc.1.) She claimed First Amendment retaliation under 42 U.S.C. § 1983 against Clayton County and Commissioners Hambrick, Franklin, and Anderson in their official and individual capacities. (*Id.* at ¶¶87-107.) She also brought a breach of contract claim against the County and a claim for punitive damages against all defendants. (*Id.* at ¶¶108-119.)

Hambrick moved to dismiss the § 1983 claim against her under Fed. R. Civ. P. 12(b)(6). (Doc. 22.) Hambrick argued that Bivins's Complaint failed to allege a plausible First Amendment claim against her. (Doc. 22-1 at 9-10.) Particularly, Bivins did not allege specific acts by Hambrick that violated clearly established law. (*Id.* at 9-14.) As a result, Hambrick contended, she was entitled to qualified immunity. (*Id.* at 10-14.) Commissioners Anderson and Franklin also asserted qualified immunity in motions for judgment on the pleadings on similar grounds. (Doc. 22, 44.)

4

The District Court denied qualified immunity for all three
Commissioners in a written order entered on August 10, 2023. (Doc. 61.)
Hambrick timely filed her notice of appeal on September 8, 2023. (Doc.
66.)

## III.  Statement of the Facts[1]

### A.    Clayton County employed Bivins as CFO under a contract.

Bivins was Clayton County's Chief Financial Officer ("CFO").
(Doc. 1, ¶9.) She reported directly to Jeffery Turner, the Board Chair.
(*Id.* at ¶14.) Turner consistently gave Bivins positive performance
reviews. (*Id.* at ¶¶13-15.)

Clayton County employed Bivins under a contract that expired on
June 30, 2022. (*Id.* at ¶16.) That contract required the County to pay for
Bivins to take leadership courses and to pay severance equal to six
months of her salary upon termination of her employment. (*Id.* at ¶¶17,
19.)

---

[1] Because this is an appeal of the denial of a motion to dismiss under
FED. R. CIV. P. 12(b)(6), Hambrick's Statement of Facts is limited to the
allegations in Bivins's Complaint.

5

## B.    Bivins's husband campaigned for the reelection of Commissioner Davis.

The Board comprises five Commissioners. At the relevant time, those Commissioners were Defendant Alieka Anderson (District 1), Hambrick (District 2), Defendant Felicia Franklin (District 3), nonparty DeMont Davis (District 4), and nonparty Jeffrey Turner (Chair). (*Id.* at ¶¶2-4, 14, 23). Commissioner Davis was up for reelection in 2022. (*Id.* at ¶ 23.) Janice Scott ("Scott") ran against him. (*Id.*) Bivins alleges that Franklin and Anderson openly supported Scott's campaign. (*Id.* at ¶25.) She makes no such allegation about Hambrick.

Bivins is married to Charlton Bivins ("Mr. Bivins"). (*Id.* at ¶21.) Mr. Bivins openly campaigned for Scott in the Spring of 2022, supporting her challenge for Davis's seat on the Board. (*Id.* at ¶23.) Bivins alleges that Hambrick, Anderson, and Franklin each knew she was married to Mr. Bivins and that he supported Scott. (*Id.* at ¶¶22, 24.)

## C.    The "Campaign Sign Incident"

On May 22, 2022, Davis saw Scott's campaign workers stealing and replacing his campaign signs with Scott's signs. (*Id.* at ¶26.) He reported that to Mr. Bivins, who encouraged him to call the police. (*Id.*)

6

City of Riverdale police responded and, mistakenly believing the reported theft referred to a vehicle theft, pulled over the Scott campaign vehicle with guns drawn. (*Id.* at ¶27.) The officers did not find any Davis campaign signs in the vehicle and let the Scott campaign workers free. (*Id.*)

Commissioner Franklin reported the incident to a local newspaper reporter a day later. (*Id.* at ¶28.) That day, the newspaper ran a story describing the campaign sign fiasco, naming Mr. Bivins as being involved on Davis's behalf, and noting that he is married to Bivins. (*Id.* at ¶¶31-32.)

Bivins makes no allegations against Hambrick related to the incident.

**D.    The Board terminated Bivins's employment contract.**

The Board met on June 7, 2022, soon after the campaign sign incident. (*Id.* at ¶ 37.) The Board was scheduled to vote on renewing Bivins's contract. (*Id.*) But when the Board reached that item on the agenda, Commissioner Anderson asked for a vote to dismiss Bivins. (*Id.* at ¶39.) Turner tabled her request and put Bivins's contract renewal up for a vote. (*Id.*) The motion failed 3-2, with Franklin, Anderson, and

Hambrick voting against the renewal. (*Id.*) By the same vote, the Board then terminated Bivins's existing contract and declared it *ultra vires.* (*Id.* ¶¶40-41.)

Bivins levies several specific allegations against Franklin and Anderson related to her termination. She claims that Franklin told Anderson, "It's going to be a good night tonight," as they walked into the Board meeting. (*Id.* at ¶38.) She also alleges that Franklin and Anderson "expressed glee" at Bivins's termination after the meeting. (*Id.* at ¶48.) Franklin purportedly told Anderson, "I can sleep good tonight," to which Anderson responded, "Do I need to get us a bottle?" (*Id.* at 48.) Bivins does not mention Hambrick in connection with these allegations.

### E. The District Court denied Hambrick qualified immunity based on Bivins's allegations against the other Commissioners.

Commissioner Hambrick asserted qualified immunity in a motion to dismiss. (Doc. 22-1 at 10-14.) She argued that Bivins failed to sufficiently allege conduct by her that, if true, would prove a violation of Bivins's right to intimate association under clearly established law. (*Id.*)

The District Court denied qualified immunity to each Commissioner based on its analysis of the specific allegations against each. Beginning with Franklin, the District Court cited Bivins's allegations that Franklin knew Mr. Bivins openly campaigned for Commissioner Davis while she supported Scott, his opponent. (Doc. 61 at 7.) Next, the District Court highlighted Franklin's reporting of the May 22 campaign sign incident to a local reporter and her request that the Chief of Police provide the audio recording to the reporter. (*Id.* at 7-8, 9.) Lastly, the District Court noted Franklin's statement to Anderson before the Board meeting—"It's going to be a good night"—and her statement afterward—"I can sleep good tonight." (*Id.* at 8.) The court concluded that "this set of allegations" sufficiently pleaded that Franklin took adverse employment actions against Bivins because of her husband's political activities. (*Id.*)

Next, the District Court examined Bivins's allegations against Anderson, which were more extensive than those against Franklin. It cited the allegations that Anderson supported Scott's campaign while knowing Mr. Bivins openly campaigned for Commissioner Davis. (*Id.* at 11.) The District Court also noted that Anderson praised Bivins's work

9

on the annual budget only a month before voting to terminate her. (*Id.*)

Bivins also alleged that Anderson was aware of the campaign sign

incident only two weeks before the Board vote. (*Id.* at 11-12.) The

District Court then noted Anderson's alleged post-meeting quip to

Franklin: "Do I need to get us a bottle?" (*Id.* at 12.) Finally, the District

Court relied on an alleged incident involving the County's payment of

university courses for certain management employees, including Bivins.

(*Id.* at 12-13.) She alleged that Anderson called for an investigation into

Bivins's tuition payments while declining an offer from another

employee to reimburse the County for his payments, telling him "you

don't have do to that. We're only going after [Bivins]." (*Id.*) The District

Court concluded that the statement alone was sufficient to plead a

retaliation claim against Anderson. (*Id.* at 13.)

Lastly, the District Court turned to Hambrick. The only allegation

specific to Hambrick the District Court found was that she knew Mr.

Bivins openly campaigned for Commissioner Davis. (*Id.* at 14.)

Otherwise, the District Court relied only on the allegations against

Franklin and Anderson, linking them to Hambrick. For example, the

District Court noted that Franklin and Anderson supported Davis's

10

opponent. (*Id.*) But Bivins does not allege the same against Hambrick.
Similarly, the District Court relied on *Anderson's* alleged statement
that "we're only going after Ramona." (*Id.* at 14-15.) It used that
statement to reason "that the fact that one of the individual Defendants
in this action told another Clayton County employee that '[w]e're only
going after' the Plaintiff is sufficient to plead plausibly here that
Defendant Hambrick voted to take adverse employment actions against
Plaintiff based on a personal motivation." (*Id.* at 15.) The District Court
concluded that these allegations were sufficient for a jury to infer an
improper motivation by Hambrick even in the absence of any direct
allegations of "statements or actions taken by Defendant Hambrick"
that demonstrate such a motivation. (*Id.*) Yet it acknowledged that
Bivins's "pleadings are weakest against Defendant Hambrick." (*Id.*)

The District Court then turned to Bivins's burden to allege facts
showing that the purported constitutional violation was clearly
established under existing law. (*Id.* at 18-19.) Citing *McCabe v.
Sharrett*, 12 F.3d 1558 (11th Cir. 1994), it found that taking an adverse
employment action against an employee based solely on who she is

11

married to was a clearly established First Amendment violation. (*Id.* at 18-20.)

## IV.   Standards of Review

"This court reviews a district court's denial of a motion to dismiss a complaint on the basis of qualified immunity *de novo.*" *Flores v. Satz*, 137 F.3d 1275, 1277 (11th Cir. 1998); *see also Chesser v. Sparks*, 248 F.3d 1117, 1121 (11th Cir. 2001) ("Whether the complaint alleges such a violation is a question of law which we review *de novo,* accepting the facts alleged in the complaint as true and drawing all reasonable inferences therefrom in the plaintiff's favor.").

## SUMMARY OF THE ARGUMENT

Bivins was required to allege specific actions *by Hambrick* sufficient to show that Hambrick voted to terminate her contract because of her marriage to defeat qualified immunity at the motion-to-dismiss stage. She fell short. But the District Court allowed her claim against Hambrick to survive. It did so by imputing Bivins's allegations against the other Commissioners onto Hambrick to conclude that Bivins alleged a sustainable intimate association claim. On that basis, the District Court denied Hambrick qualified immunity.

12

The District Court's approach violated this Court's precedent. In several decisions, this Court has held that the unconstitutional motives of one or more legislative body members cannot be imputed onto other members to establish liability under § 1983. Had the District Court followed that rule, it would have properly considered only whether Bivins's lone direct factual allegation against Hambrick specifically— that she knew of Mr. Bivins's campaigning for Commissioner Davis— was enough to sustain her claim against Hambrick.

The District Court's errors did not end there. It also held that Hambrick's alleged constitutional violation was clearly established under prior case law. But its analysis of those cases was flawed. The District Court misread *McCabe* by interpreting conceded issues as the Court's holdings. In any event, *McCabe* and other cases it relied on are materially distinguishable in ways that prevent them from clearly establishing the law applicable to the alleged facts here.

For these reasons, and as explained below, the District Court erred in denying Hambrick qualified immunity, and its decision should be reversed.

13

## ARGUMENT AND CITATIONS OF AUTHORITY

**I.    The standards governing Hambrick's motion to dismiss on qualified immunity set the stage for uncovering the District Court's error.**

This appeal involves the interplay between the governing pleading standards and the qualified immunity standard, including the criteria for proving a First Amendment retaliation claim based on the right to intimate association. *See Keating v. City of Miami*, 598 F.3d 753, 760 (11th Cir. 2010) ("At the motion to dismiss stage in the litigation, the qualified immunity inquiry and the Rule 12(b)(6) standard become intertwined.") (internal quotations omitted). "A motion to dismiss a complaint on qualified immunity grounds will be granted if the complaint fails to allege the violation of a clearly established constitutional right." *Leslie v. Hancock County Bd. of Educ.*, 720 F.3d 1338, 1343–44 (11th Cir. 2013). To survive, "a plaintiff must plead that **each** Government-official defendant, **through the official's own individual actions**, has violated the Constitution." *Keating*, 598 F.3d at 763 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)) (emphasis added).[2]

---

[2] This Court's interlocutory jurisdiction to review the denial of qualified immunity extends to determining whether Bivins's complaint

Bivins failed to allege individual actions by Hambrick sufficient to find, or even reasonably infer, a constitutional violation under clearly established law. The only allegation specific to Hambrick that the District Court relied on in denying her qualified immunity was her knowledge that Bivins's husband openly campaigned for Commissioner Davis's opponent. But the Complaint does not allege that Hambrick supported Davis or any other facts that could reasonably infer that *she* was motivated by those political factors in voting to terminate Bivins's contract.

Seemingly aware that more was required, the District Court based its denial of qualified immunity to Hambrick mostly on the allegations against Commissioners Franklin and Anderson. That was an error. The actions of others cannot be imputed onto a public official to establish liability under § 1983. Instead, a plaintiff must allege facts showing

---

sufficiently pleaded a constitutional violation. *See Iqbal*, 556 U.S. at 672-75. "[W]hether a particular complaint sufficiently alleges a clearly established violation of law cannot be decided in isolation from the facts pleaded." *Id.* at 673. The sufficiency of Bivins's pleadings is "both inextricably intertwined with and directly implicated by the qualified immunity defense." *Id.*

that the official, through her own individual actions, violated plaintiff's constitutional rights.

When Bivins's allegations against Franklin and Anderson are stripped away, the only specific allegation against Hambrick is that she knew Mr. Bivins supported Commissioner Davis's opponent. That lone allegation cannot sustain her claim against Hambrick.

**A.    To survive Hamrick's motion to dismiss, Bivins was required to plead facts specific to Hambrick sufficient to show that she violated Bivins's First Amendment rights through her own actions.**

A plaintiff's pleading burden is familiar; she must allege "a short plain statement of the claiming showing that [she] is entitled to relief." Fed. R. Civ. P. 8(a)(2). While Rule 8 does not require "detailed factual allegations," it does demand "more than an unadorned, the-defendant-unlawfully-harmed-me-accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A plaintiff must offer more than labels and conclusions, a formulaic recitation of the elements of her claim, and naked assertions devoid of factual enhancement. *Id.* And while the court must accept all factual allegations at the pleading stage, it need not do the same for legal conclusions couched as factual allegations. *Id.*

To survive a motion to dismiss under these standards, a plaintiff must allege sufficient facts that, if accepted as true, "state a claim that is plausible on its face." *Id.* Facial plausibility requires more than "a sheer possibility." *Id.* "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007).) Instead, facial plausibility demands factual allegations that allow the reasonable inference that defendant is liable. *Iqbal*, 556 U.S. at 678. In the § 1983 context, a plaintiff must plead facts specific to *each* public official defendant showing that they respectively violated her constitutional rights through their own individual actions. *Keating*, 598 F.3d at 763.

Courts apply a two-step analysis when applying these standards on a motion to dismiss. First, the court must weed out the allegations not entitled to the assumption of truth. *Iqbal*, 556 U.S. at 679-81. Second, the court must determine whether the remaining allegations, if true, present a facially plausible claim for relief. *Id.*

17

## B.   Bivins must clear a high hurdle to defeat Hambrick's qualified immunity from her First Amendment claim.

Qualified immunity protects governmental officials performing discretionary functions[3] from suit unless their conduct violates a plaintiff's constitutional rights under clearly established law. *Gaines v. Wardynski*, 871 F.3d 1203, 1206 (11th Cir. 2017). It protects all "but the plainly incompetent who knowingly violated federal law." *Id.* at 1207. To defeat qualified immunity, a plaintiff must show that the public official violated a constitutional right and that the right was clearly established under then-existing law in light of the specific context of the case *Id.* As this Court has repeatedly recognized, "[i]t is particularly difficult to overcome the qualified immunity defense in the First Amendment context." *Id.* at 1210 (citing several prior cases).

## C.   Bivins needed to plead facts that, if true, would prove that Hambrick voted to terminate her contract because of an unconstitutional motive.

The Constitutional right at issue here is the right to intimate association. The First Amendment protects "the freedom to choose to enter into and maintain certain intimate human relationships" from

---

[3] Bivins does not dispute that Hambrick was acting in her discretionary capacity. (Doc. 61 at 17.)

undue government intrusion. *Gaines*, 871 F.3d at 1212. To show an undue intrusion, a plaintiff must show that she suffered an adverse action[4] because she exercised her protected right. *Id.* at 1212-13. In other words, she must plead facts showing that an adverse action was taken in retaliation for exercising a First Amendment right. *See DeMartini v. Town of Gulf Stream*, 942 F.3d 1277, 1289 (11th Cir. 2019).

Synthesizing these standards, Hambrick is entitled to qualified immunity unless Bivins's Complaint alleges conduct by Hambrick that, if true, would prove that she voted to terminate Bivins because of her marriage and that it was clearly established then that doing so was unconstitutional in light of these particular alleged facts.

## II. Bivins failed to plead allegations against Hambrick sufficient to establish a First Amendment violation and defeat qualified immunity.

Bivins's specific allegations against Hambrick are scant. So much so that the District Court needed to shoehorn the allegations against Franklin and Anderson into those against Hambrick to conclude that

---

[4] Whether Bivins sufficiently alleged an adverse action is not at issue in this appeal.

Bivins sufficiently pleaded a constitutional violation by Hambrick. The District Court erred in using that approach. The law required Bivins to allege specific acts *by Hambrick* that could sustain her First Amendment claim. She cannot survive Hambrick's motion to dismiss by imputing her allegations against the other Commissioners onto Hambrick. When those allegations are correctly removed from the equation, those that remain do not sufficiently state a constitutional violation under clearly established law. As a result, Bivins's factual claims do not overcome Hambrick's qualified immunity.

**A.    The District Court erred in using the allegations against Franklin and Anderson to conclude that Bivins sufficiently pleaded a First Amendment violation by Hambrick.**

The District Court's fundamental error was imputing Bivins's allegations against Franklin and Anderson onto Hambrick. This Court's precedent reveals that error.

In *Matthews v. Columbia County*, this Court held that the unconstitutional motive of one legislative body member cannot be imputed onto other members to establish liability under § 1983. 294 F.3d 1294 (11th Cir. 2002). There, a five-member county Board of Commissioners voted to eliminate several county positions, including

20

plaintiff's. *Id.* at 1295. Plaintiff sued the three Commissioners who voted to eliminate her job and the county. *Id.* She claimed the Board of Commissioners terminated her in retaliation for comments she made about a company with which the county was considering contracting in violation of her First Amendment rights. *Id.* The case went to trial against the county only. *Id.* at 1295-96.

The jury returned a verdict for plaintiff, but found in special interrogatories that only one of the Commissioners was motivated by an unconstitutional motive and that he influenced the other two Commissioners to vote to eliminate plaintiff's position. *Id.* at 1296. The district court denied the county's post-trial judgment as a matter of law. *Id.*

This Court reversed that ruling, holding that liability could not be imposed on the county unless a majority of the Board acted unconstitutionally. *Id.* at 1297. The jury's finding that only one Commissioner acted with an unconstitutional purpose insulated the county from liability because "[a]n unconstitutional motive on the part of one member of a three-member majority is insufficient to impute an unconstitutional motive to the Commission as a whole." *Id.*

21

The Court then rejected plaintiff's arguments that the other two commissioners ratified the unconstitutional motive of the third. *Id.* Plaintiff highlighted the jury's finding the other two commissioners were influenced by the third, they knew of the third member's unconstitutional motive, and the three of them often voted as a bloc. *Id.* None of those grounds were sufficient, the Court held. *Id.* It reasoned that holding otherwise "would put lawmakers in an unacceptable position." *Id.* at 1298. The Court recognized that lawmakers might support the same legislation for many reasons. *Id.* For that reason, a "well-intentioned lawmaker who votes for the legislation—even when he votes in the knowledge that others are voting for it for an unconstitutional reason and even when his unconstitutionally motivated colleague influences his vote—does not automatically ratify or endorse the unconstitutional motive." *Id.* A rule to the contrary would force the well-intentioned lawmaker "either to vote against his own view of what is best for his county or to subject his county to Section 1983 liability." *Id.* "[T]he law compels no such outcome." *Id.*; *see also, Campbell v. Rainbow City, Ala.*, 434 F.3d 1306, 1312-13 (11th Cir. 2006) ("An improper motive of one of the members of a nine-member

22

Planning Commission is not imputed to the rest of the Commission" for purposes of § 1983 liability against a city for alleged First Amendment violation); *Mason v. Village of El Portal,* 240 F.3d 1337, 1339 (11th Cir.2001) (granting summary judgment to municipality where plaintiff had only shown evidence that one member of a three-member majority had voted to fire plaintiff for a discriminatory reason).

*Dixon v. Burke County, Ga.*, is similar. 303 F.3d 1271 (11th Cir. 2002). There, a grand jury of nineteen people was appointed to select a candidate to fill a vacant seat on the county Board of Education. *Id.* at 1273. Plaintiff, a woman, applied for the vacancy, but the grand jury recommended a male candidate nominated by the foreman by a vote of 12-7. *Id.* at 1273-74. Plaintiff filed a gender discrimination suit against the foreman and the county, asserting a § 1983 claim against the latter. *Id.* at 1276. The Court affirmed summary judgment for the county. *Id.* It emphasized the lack of evidence that any grand jury member other than the foreman was improperly motivated by gender. *Id.* The Court also observed the absence of evidence that the foreman coerced the others to vote for his recommended candidate. *Id.* As a result, "[a] jury

23

would have to resort to speculation as to why the other grand jurors acted as they did." *Id.*

The cases cited above all address the ultimate liability of a county or municipality. That is, they show that § 1983 liability cannot be imposed on a local government by imputing the improper motive of one or more lawmakers onto others to show that the government—through a majority of its legislative body—acted unconstitutionally. That reasoning applies here, even though Hambrick's liability is at issue rather than the County's. If the alleged motivations of Franklin and Anderson cannot be imputed onto Hambrick in assessing the County's liability, the same must be true for determining Hambrick's.

The District Court disregarded that rule here. It based its denial of Hambrick's motion to dismiss mostly on Bivins's allegations against Franklin and Anderson. Specifically, it relied on her allegation that Franklin and Anderson supported Davis's opponent and Anderson's statement that "we're going after" Bivins. Neither of those allegations involved purported conduct by Hambrick. Yet they were critical to the District Court's denial of qualified immunity.

24

The District Court also relied on its "experience with politics" and "common sense" in denying Hambrick qualified immunity. (Doc. 61 at 15, n. 2.) It reasoned that "if a subgroup of a political body acted together to take these actions against Plaintiff, a reasonable jury could conclude that those actions were politically motivated." *Id.* That, too, conflicts with this Court's precedent because it requires attributing the allegations against Franklin and Anderson to Hambrick. The purported statements exchanged between Franklin and Anderson before and after the meeting might suggest that they were acting in unison. But Bivins does not claim that Hambrick was part of, or present for, either exchange. Nor does Bivins allege that Hambrick was aligned with Franklin and Anderson in their support of Scott's campaign for Davis's seat on the Board. So the allegations against Hambrick did not support the District Court's decision to group her together with Franklin and Anderson.

### B.    Bivins's allegations against Hambrick do not establish a First Amendment violation.

When the allegations focused on the other Commissioners are stripped away, as they must be, what remains does not sufficiently state a claim against Hambrick. The only direct allegation against

Hambrick the District Court cited in support of its holding that Bivins sufficiently pleaded a constitutional violation against her was that she knew Bivins's husband was campaigning for Commissioner Davis's reelection. (Doc. 61 at 14.) Unlike Franklin and Anderson, Bivins does not claim that Hambrick supported Davis's opponent. The absence of that allegation against Hambrick eviscerates any reasonable inference that Mr. Bivins's political activities motivated her vote to terminate Bivins's contract. In further contrast to Franklin and Anderson, Bivins does not assert that Hambrick participated in the fallout from the campaign sign incident.

Nor does she claim that Hambrick made any statements before or after the meeting that could infer an improper motive. Yet the District Court latched on to Anderson's pre-meeting statement that "we're going after" Bivins. (*Id.* at 14-15.) It found that Anderson's statement demonstrated that all three Commissioners "were looking for means to take action against [Bivins]." (*Id.*) On that basis, the District Court concluded "that the fact that one of the individual Defendants in this action told another Clayton County employee that '[w]e're only going after' the Plaintiff is sufficient to plead plausibly here that Defendant

Hambrick voted to take an adverse employment action against Plaintiff based on a personal motivation." (*Id.* at 15.) But in its next breath, the District Court acknowledges the flaw in its reasoning: Bivins "does not directly allege statements or actions taken by Defendant Hambrick that demonstrate that Hambrick took these actions because of Plaintiff's association with her husband." (*Id.*)

Bivins must have alleged conduct *by Hambrick* that could sustain a claim under § 1983. *See Keating*, 598 F.3d at 763 (recognizing that to survive a motion to dismiss a § 1983 claim, "a plaintiff must plead that *each* Government-official defendant, *through the official's own individual actions*, has violated the Constitution.") (quoting *Iqbal*, 556 U.S. at 678) (emphasis added). The District Court recognized that Anderson's statement falls short of that standard. Yet it made the statement the centerpiece of its holding that Bivins sufficiently stated a First Amendment violation by Hambrick and its attendant denial of qualified immunity. That was an error.

The only allegation *against Hambrick* the District Court relied on was her knowledge that Mr. Bivins campaigned for Commissioner Davis. (Doc. 61 at 14.) Without more, that sole claim is not enough. A

27

jury could not reasonably infer that Hambrick was motivated to act against Bivins simply because she knew her husband's preferred candidate.

As a result, Bivins failed to plead a claim against Hambrick for violating her right to intimate association. Bivins therefore cannot defeat Hambrick's assertion of qualified immunity.

## III. The District Court erred in holding that Hambrick violated Bivins's First Amendment rights under clearly established law.

For qualified immunity, "clearly established law must be 'particularized' to the facts of the case." *White v. Pauly*, 137 S. Ct. 548, 552 (2017) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 742 (2011)). On a motion to dismiss asserting qualified immunity, the "facts of the case" are framed by the complaint's allegations. *See Iqbal*, 556 U.S. at 674-75.

As explained above, the only allegation against Hambrick that the District Court properly be considered in determining the sufficiency of Bivins's claim is that Hambrick knew Mr. Bivins was campaigning for Commissioner Davis. Neither Bivins nor the District Court pointed to any prior case clearly establishing that taking an adverse employment action because of the political preferences of an employee's spouse,

28

without any allegation that defendant disagrees with those preferences, violates the right to intimate association.

Even if the District Court were correct in considering the allegations against the other Commissioners to find a sufficiently pleaded constitutional violation against Hambrick, it erred in holding that the violation was "clearly established." The District Court cited *McCabe v. Sharrett* as clearly establishing that Hambrick and other Commissioners violated Bivins's right to intimate association. (Doc. 61 at 19-22); 12 F.3d 1558 (1994). But its holding misreads that case. *McCabe* involved a secretary to a police chief who claimed that she was transferred and demoted because she married a police officer in the department. *McCabe*, 12 F.3d at 1559-60. The District Court read *McCabe* as holding that the employee's transfer burdened her constitutional right to marry. (Doc. 61 at 19-20.) It stated thus that "the Eleventh Circuit clearly found that taking an adverse action against an employee solely on the basis of to whom she is married burdened the First Amendment right to intimate association." (*Id.* at 20.) That was not *McCabe's* holding. McCabe's employer conceded that it took an adverse employment action because of to whom she was married.

29

*McCabe*, 12 F.3d at 1560. So this Court never reached those conclusions on its own. Instead, it only addressed whether the employer's actions were justified, holding that they were. *McCabe*, 12 F.3d at 1573-74. As a result, the holdings and findings the District Court cited here as clearly establishing the law do not exist. The *McCabe* Court did not *hold* that the employee's transfer burdened her right to be married, nor did it *find* that taking adverse action against an employee because of to whom she is married burdened the right to intimate association. The District Court's application of *MaCabe*, thus, was incorrect.

In any event, *McCabe* is materially distinguishable. There, plaintiff was transferred because she married a subordinate of the police chief for whom she worked. *Id.* at 1561. The department employed both plaintiff and her husband before their marriage. *Id.* at 1559-60. Plaintiff's marriage itself (and the disruption it might cause) drove her employer's decision, not her husband's conduct during their marriage.

By contrast, Bivins and her husband were married before the events giving rise to her suit. (Doc. 1 at ¶21.) For that reason, Bivins's decision to marry her husband is not what prompted the Board's action

30

against her. Instead, she alleges that her husband's campaign activities while they were married motivated the Board's decision. *McCabe*, thus, does not address the issue presented here: whether taking an adverse employment action against a public employee due to her husband's preferred political candidate violates her First Amendment right to intimate association.

This subtle but dispositive distinction reveals the District Court's error. For a prior case to clearly establish the law, it must be "materially similar." *Gaines*, 871 F.3d at 1209. "This method requires us to consider whether the factual scenario that the official faced is fairly distinguishable from the circumstances facing a government official in a previous case." *Id.* (internal quotations omitted). The prior case need not be "directly on point," but "it must be close enough to have put "the statutory or constitutional question beyond debate." *Id.* at 1209-10 (internal quotations omitted). Any reasonable debate about the lawfulness of a public official's conduct under existing law entitles the official to qualified immunity. *Id.* at 1210. "This court has stated many times that if case law, in factual terms, has not staked out a bright line, qualified immunity almost always protects the defendant." *Id.* (internal

quotations omitted). *McCabe* does not meet these standards. Its material factual distinctions prevent it from establishing a "bright line" that puts Hambrick's alleged actions "beyond debate."

The two other cases the District Court cites illustrate this distinction. In a footnote, the District Court stated that those decisions "reaffirm" that "taking adverse employment actions solely due to the intimate relationship status of a government employee burdens the First Amendment right of intimate association." (Doc. 61 at 20, n.3.) Neither is sufficiently particularized to the alleged facts here to have clearly established the law. In *Shahar v. Bowers*, the Georgia Attorney General withdrew an offer of employment after learning that plaintiff (a woman) intended to marry another woman. 114 F.3d 1097, 1101 (11th Cir. 1997). This Court assumed, without deciding, that the right to intimate association was implicated before holding that it was not infringed. *Id.* at 1100, 1102, 1110-11. Similarly, in *Lawson v. Curry*, plaintiff (a Black woman) alleged that she was harassed and terminated from her public employment because she dated white men and became pregnant by a white man. 244 Fed. Appx. 986, 987 (11th Cir. 2007).

Neither *Shahar* nor *Lawson* are particularized to the alleged facts here. In each, the public employer took adverse action against plaintiffs because it disapproved of their relationships in and of themselves—a same-sex relationship in *Shahar* and interracial relationships in *Lawson*. That is not the scenario Bivins alleges here. Even construing the allegations in her favor, Bivins does not claim that Hambrick voted to terminate her contract because she disapproved of her marriage to Mr. Bivins. Instead, her claim is based on Hambrick's purported disapproval of her husband's campaign activities. So, at most, *Shahar* and *Lawson* affirm the general rule that the right to intimate association protects a public employee's right to marry or date who they choose. But that broad principle is too generalized to clearly establish the law. *See White*, 137 S. Ct. at 551-52 (warning lower courts that "'clearly established law' should not be defined 'at a high level of generality.'"); *Gaines*, 871 F.3d at 1213 (emphasizing that the question in cases like this not whether there is a First Amendment right to intimate association that public employers cannot infringe upon).

The District Court's reliance on *Mize v. Jefferson City Bd. of Educ.* reinforces the material differences between the facts here and those in

33

the cases it cited as clearly establishing a First Amendment violation. In analyzing Bivins's allegations against Franklin and Anderson—and, by extension, Hambrick—the District Court emphasized the close temporal proximity of the campaign sign incident and the Board's vote to terminate her contract. (Doc. 61 at 9, 12) It relied on *Mize's* rule that "[w]here termination follows protected activity, it is usually reasonable to infer that the activity, it is usually reasonable to infer that the activity was the cause of the adverse employment decision." (*Id.*) (quoting 93 F.3d 739, 745 (11th Cir. 1995)). But the District Court misapplied the rule. The protected activity at issue here is Bivins's marriage to her husband, not her husband's political activity. He is not a plaintiff alleging an infringement upon his free speech rights. And Bivins does not allege that her decision to marry him motivated the Board's employment decision or that they wed soon before its vote. By contrast, the *Mize* rule might apply to the facts presented in *McCabe*, *Shahar*, and *Lawson* because the adverse employment actions in those cases were taken soon after the employee-plaintiff exercised their First Amendment to enter into the intimate relationships they chose.

34

**CONCLUSION**

For these reasons, Hambrick asks this Court to reverse the

district court's denial of qualified immunity.

Respectfully submitted,

**FREEMAN MATHIS & GARY, LLP**

*/s/ P. Michael Freed*
A. Ali Sabzevari
Georgia Bar No. 941527
asabzevari@fmglaw.com
Kirsten S. Daughdril
Georgia Bar No. 633350
kirsten.daughdril@fmglaw.com
John D. Bennett
Georgia Bar No. 059212
jbennett@fmglaw.com
Jack R. Hancock
Georgia Bar No. 322450
jhancock@fmglaw.com
P. Michael Freed
Georgia Bar No. 061128
michael.freed@fmglaw.com

*Counsel for Appellant Gail Hambrick*

100 Galleria Parkway, Ste. 1600
Atlanta, Georgia 30339-5948
Tel: (770) 818-0000
Fax: (833) 330-3369

35

**CERTIFICATE OF COMPLIANCE**

1.      This document complies with the word limit of Fed. R. App. P. 32(a)(7)(B) because, excluding the parts of the document exempted by Fed. R. App. P. 32(f), this document contains 6,317 words. This word count was derived in reliance on the word count of the word-processing system (Microsoft Word) used to prepare this document.

2.      This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this document has been prepared in proportionally-spaced typeface using Microsoft Word in Times New Roman, 14-point font.

Dated: December 11, 2023.

/s/*P. Michael Freed*
P. Michael Freed
Georgia Bar No. 061128

## CERTIFICATE OF SERVICE

I hereby certify that I have this day electronically submitted the foregoing to the Clerk of Court using the CM/ECF system which will automatically send electronic mail notification to counsel of record who are:

Andrew Ready Tate
Edward D. Buckley
Buckley Beal LLP
600 Peachtree Street, NE
Suite 3900
Atlanta, Georgia 30308
atate@buckleybeal.com
edbuckley@buckleybeal.com

*Counsel for Plaintiff*

This 11th day of December 2023.

**FREEMAN MATHIS & GARY, LLP**

*/s/ P. Michael Freed*
P. Michael Freed
Georgia Bar No. 061128
michael.freed@fmglaw.com

100 Galleria Parkway, Suite 1600
Atlanta, Georgia 30339-5948
(770) 818-0000 (telephone)
(833) 330-3669 (facsimile)